UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Charles Carmen, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    - against -<br><br>Zesty Paws LLC,<br><br>       Defendant | 1:22-cv-05529<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Zesty Paws LLC ("Defendant") manufactures, labels, and/or sells nutritional supplements for pets including Vet Strength Mobility Bites, Hemp Elements Mobility Bites, Ancient Elements Mobility Bites, Core Elements Mobility Flavor Infusions, Multifunctional 8-in-1 Bites, and Aller-Immune Bites which make various claims with respect to their active ingredients and quality ("Products").

**I. CHONDROITIN CLAIMS**

2. The front label of the Vet Strength Mobility Bites promotes the presence of chondroitin sulfate, an ingredient that supports joint health.



3. The side panel describes this ingredient as "[A] compound that supports normal healthy cartilage, connective tissue, and joint function."



4. The alternate side promises 100 mg of chondroitin sulfate.



**Product Facts**
Active Ingredients per 1 Soft Chew (4.5 g):
Glucosamine HCl (Shellfish) .................................................. 600 mg
Methylsulfonylmethane (OptiMSM®) ...................................... 500 mg
Eggshell Membrane (BiovaPlex®) ........................................... 188 mg
Chondroitin Sulfate (Porcine) .................................................. 100 mg
Hyaluronic Acid ......................................................................... 10 mg
Proteases (Serrazimes™) .............................................................. 7 mg
Zinc Sulfate .................................................................................. 5 mg

**Inactive Ingredients:** Beef Liver, Coconut Glycerin, Flaxseed, Garbanzo Flour, Mixed Tocopherols, Natural Bacon Flavor, Natural Beef Steak Flavor, Natural Flavors (from Oregano, Flaxseed and Plums), Palm Fruit Oil, Pea Flour, Powdered Cellulose, Rosemary Extract, Sunflower Lecithin, Sweet Potato.

5. However, independent laboratory analysis concluded that instead of containing 100 mg chondroitin sulfate, it contained less than 2.5 mg, or less than 2.5% of the amount promised.

6. The Mobility Bites and Hemp Elements Mobility Bites promised 125 mg chondroitin sulfate, yet laboratory testing was unable to detect the presence of this ingredient in these products.

7. The Multifunctional 8-in-1 Bites promised 75 mg chondroitin sulfate, yet the samples analyzed resulted in no detectable amount and less than 2.5 mg, less than 3.5% of the amount promised.

## II. PROBIOTIC CLAIMS

8. Several of the Products, including the Aller-Immune Bites and Multifunctional 8-in-1 Bites, promote the presence of probiotic ingredients.



9. Probiotics are live microorganisms that are intended to have health and immunity benefits when consumed.

10. The side panel calls attention to the ingredients which prevent allergies in dogs, such as its "five-strain probiotic blend that supports normal gut flora and immune system activity."



11. The Product Facts identifies the five probiotics are "*Lactobacillus acidophilus*, *Lactobacillus plantarum*, *Lactobacillus brevis*, *Lactobacillus fermentum* and *Lactococcus lactis*,"

4

and that it contains 250 million colony forming units ("CFU") of this blend.



12. Independent laboratory analysis of the Aller-Immune Bites concluded that instead of containing 250 million CFU of lactobacillus bacteria per 4 g, it contained 72,000 CFU of lactobacillus bacteria, which is less than one thousandth of a percent of the promised amount.

13. The Multifunctional 8-in-1 Bites promised 500 million CFU of lactobacillus bacteria per 4 g, but lab analysis detected 60,000 CFU per 4 g, slightly greater than one thousandth of a percent of the promised amount.

### III. QUALITY CLAIMS

14. All of the Products promote the high quality of the ingredients and the production processes used, through statements such as "No Artificial Flavors or Preservatives," "No Synthetic Colors," "Made in the USA from US and Globally Sourced Ingredients," "Human-grade ingredients," and the gold "Quality Seal" from the National Animal Supplement Council ("NASC").



15. By promising the Products do not contain artificial flavors, preservatives or colors, are made with human-grade ingredients, are made in the United States, and contain the approval and endorsement of a third-party organization, pet owners will expect products of high quality.

16. This expectation includes not only that the Products will contain the listed amount of key active ingredients, but that they will be free of harmful contaminants.

17. However, laboratory analysis of the Vet Strength Mobility Bites detected a total aerobic microbial count of 140,000 CFU per gram.

18. This amount is 14 times greater than the limit recommended by the United States

Pharmacopeial Convention's ("USP") recommended limit for nutritional supplements with botanicals, which is the category of the Products.

19. Laboratory analysis concluded that the total aerobic microbial count of the Hemp Elements Mobility Bites was 10% higher than the USP's maximum recommended level.

## IV. CONCLUSION

20. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

21. Plaintiff paid more for the Products than he would have had he known the representations and omissions were false and misleading, and he would not have bought them or would have paid less.

22. As a result of the false and misleading representations, the Products are sold at a premium price, approximately no less than $42.99 for 90 soft chews (405 g), excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

### Jurisdiction and Venue

23. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

24. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

25. Plaintiff Charles Carmen is a citizen of Illinois.

26. Defendant Zesty Paws LLC is a Delaware limited liability company with a principal place of business in Orlando, Orange County, Florida.

27. Based on publicly disclosed information, Defendant's managing members are

7

citizens of Florida.

28. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant's members are citizens.

29. The members of the class Plaintiff seeks to represent are more than 100, because the Products are sold from pet stores, big box stores, online third-parties such as Amazon.com and Defendant's website, across the States covered by Plaintiff's proposed classes.

30. Venue is in this District and assignment is to the Eastern Division because Plaintiff resides in Lake County and a substantial part of the events or omissions giving rise to the claims occurred here, including Plaintiff's purchase, transactions and/or use (by his pets) of the Products and awareness and/or experiences of and with the issues described here.

Parties

31. Plaintiff Charles Carmen is a citizen of Grayslake, Illinois, Lake County.

32. Defendant Zesty Paws LLC is a Delaware limited liability company with a principal place of business in Orlando, Orange County, Florida.

33. Defendant is a leading seller of nutritional supplements for pets.

34. Plaintiff purchased the Products including the Vet Strength Mobility Bites, for use by his dogs, at locations including Pet Supplies Plus, 2982 W Il Rte 60 Mundelein IL 60060-4269, between April 2022 and June 2022, among other times.

35. Plaintiff believed and expected the Products contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels, because that is what the representations and omissions said and implied.

36. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Products, on the labeling, statements, omissions, claims, and

instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Products and separately, through in-store, digital, audio, and print marketing.

37. Plaintiff bought the Products at or exceeding the above-referenced price.

38. Plaintiff chose between Defendant's Products and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

39. Plaintiff intends to, seeks to, and will purchase the Products again when he can do so with the assurance their representations are consistent with their abilities, attributes, and/or composition.

40. Plaintiff is unable to rely on the labeling and representations not only of these Products, but other nutritional supplements for his pets, because he is unsure whether those representations are truthful.

Class Allegations

41. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alaska, Montana, Wyoming, Arkansas, Idaho, Kentucky, West Virginia, Kansas, Iowa, Mississippi, Nebraska, and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

42. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

43. Plaintiff's claims and basis for relief are typical to other members because all were

9

subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

44. Plaintiff is an adequate representative because his interests do not conflict with other members.

45. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

46. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

47. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

48. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, *et seq.*</u>

49. Plaintiff incorporates by reference all preceding paragraphs.

50. Plaintiff relied on the representations and omissions to believe the Products contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels,

51. Plaintiff would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts<br>(Consumer Fraud Multi-State Class)</u>

52. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

53. The members of the Consumer Fraud Multi-State Class reserve their rights to assert

their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

54. The members of the Consumer Fraud Multi-State Class were misled similarly to Plaintiff.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

55. The Products were manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that they contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels.

56. Defendant directly marketed the Products to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, distributed product descriptions, and targeted digital advertising.

57. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

58. Defendant's representations about the Products were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that they contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels.

59. Defendant described the Products so Plaintiff believed they contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels, which became part of the basis of the bargain that it would conform to its affirmations and promises.

60. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

61. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for innovative and cutting-edge nutritional supplements for pets.

62. Plaintiff recently became aware of Defendant's breach of the Products' warranties.

63. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Products' express and implied warranties.

64. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, industry bodies, competitors, and consumers, to its main offices, and by consumers through online forums.

65. The Products did not conform to its affirmations of fact and promises due to Defendant's actions.

66. The Products were not merchantable because they were not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because they were marketed as if they contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels.

67. The Products were not merchantable because Defendant had reason to know the particular purpose for which the Products were bought by Plaintiff, because he expected they contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels, and he relied on Defendant's skill and judgment to select or furnish such suitable products.

12

### Negligent Misrepresentation

68. Defendant had a duty to truthfully represent the Products, which it breached.

69. This duty was non-delegable, based on Defendant's holding itself out as having special knowledge and experience in this area, custodian of the Zesty Paws brand, recognized for the highest quality nutritional supplements for pets.

70. Defendant's representations and omissions regarding the Products went beyond the specific representations on their packaging, as they incorporated the extra-labeling promises and commitments to quality and transparency that it has been known for.

71. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

72. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

73. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Products.

### Fraud

74. Defendant misrepresented and/or omitted the attributes and qualities of the Products, that they contained the promised amounts of the active ingredients and did not contain contaminants above recommended levels.

75. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

### Unjust Enrichment

76. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members,

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary damages, including statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: October 9, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com